UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

JIMMY RAY BOSTWICK,                                    CASE NO. 04-16670-WSS
THERESA ANN BOSTWICK,

    Debtors.                                            Chapter 7

---

JOSEPH O. VERNEUILLE, JR., Trustee,

    Plaintiff,

v.                                                     ADV. PROC. NO. 05-01085

BILL W. AULTMAN, individually
and in his capacity as Executor of the
Estate of Rene J. Stricklin, Deceased,

    Defendant.

## ORDER ON COMPLAINT

    Gilbert Fontenot, Counsel for the Plaintiff
    Terri S. Owens, Counsel for the Defendant

This matter came on for hearing on the Trustee's complaint to recover under the Alabama Fraudulent Transfer Act, §8-9A-1, et seq. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). After due consideration of the pleadings, testimony, evidence and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

Rene J. Stricklin died on October 9, 2002; his last will and testament named the

1

Defendant, Bill W. Aultman ("Aultman"), as personal representative of Stricklin's estate. The will specifically identified two insurance policies: a J.C. Penny life insurance policy (hereafter referred to as the Stonebridge life insurance policy) with a face value of $75,000 and a Hartford-Omni life insurance policy with face value of $25,000/$135,000. The will instructed Aultman to use the proceeds from the life insurance policies to pay the debts of the estate and make certain bequests listed in the will. Aultman discovered another life insurance policy with Allstate Insurance. Stricklin's mother was the named beneficiary on the policy, but she died before her son. Therefore, the funds came into the Stricklin estate. Aultman testified that he submitted claims for all three insurance policies in late April or early May 2003. Under the terms of Stricklin's will, Aultman would receive the balance of the funds remaining in the estate for payment for his service as personal representative after all debts were paid and bequests made. He was also entitled to a $10,000 bequest and 5% of the proceeds from the sale of Stricklin's home.

The Hartford-Omni policy listed Stricklin's estate as beneficiary; however, the Stonebridge policy listed Annie Busby and the Debtor, Theresa Bostwick, as beneficiaries. Busby predeceased Stricklin, leaving Bostwick as the sole beneficiary of the policy. When Aultman's claim on the Stonebridge policy was denied because neither he nor the estate were named as beneficiaries, Aultman contacted Stonebridge and learned that Bostwick was the sole beneficiary. Stonebridge sent the claim forms to Aultman. Aultman is not related to Bostwick and did not know her prior to serving as personal representative of Stricklin's estate.

In late May 2003, Aultman contacted Bostwick and asked her to attend a viewing of Stricklin's videotaped will. After she watched the video, Aultman told Bostwick that she was the

2

Case 05-01085    Doc 48    Filed 03/31/06    Entered 03/31/06 16:13:26    Desc Main
Document    Page 2 of 9

sole beneficiary of the Stonebridge policy. Bostwick testified that Aultman told her that this must be a mistake, and that the funds should go the estate to cover Stricklin's debts. Aultman asked Bostwick to turnover the funds to the estate in accordance with Stricklin's wishes. Bostwick believed that the funds were needed to pay Stricklin's debts. Aultman did not tell Bostwick about the third insurance policy from Allstate.

Aultman gave Bostwick the claim form from Stonebridge. The form contained Bostwick's personal information and signature, but listed Aultman's mailing address, at his request. Stonebridge placed the $75,000 proceeds from the policy in a checking account and sent the checks with Bostwick's name to Aultman. Aultman contacted Bostwick again and asked her to sign the checks that he had written. Bostwick signed one check to herself for $500 and another check payable to the Estate of Rene Stricklin for $74,500. At the time that she signed the checks, Bostwick prepared a receipt stating that she was paying the funds to Stricklin's estate in accordance with his will. Bostwick testified that she was concerned about her creditors and wanted some acknowledgment that she did not give the money away. Aultman deposited the $74,500 check into the estate account on June 11, 2003; he deposited a check in the amount of $61,627 for the proceeds of the Allstate insurance policy on June 13, 2003. At the time that she negotiated the $74,500 check to Stricklin's estate, Bostwick did not know about that the proceeds from the Allstate insurance policy were available to pay the debts of the estate.

Although the will did not allow Aultman to take a salary or make withdrawals from the estate, Aultman made withdrawals from the estate totaling approximately $67,000 prior to making the bequests under Stricklin's will.

At the time that Bostwick paid the Stonebridge policy proceeds over to the estate, she was

3

not working due to an on-the-job injury. However, she was receiving payments from her employer equivalent to her wages. Bostwick's husband had also been injured at work, and had only recently returned to work. He was the primary wage earner for the family. Bostwick and her husband owned a mobile home, and owed $11,700 on the mortgage for the home. Bostwick believed the value of the mobile home to be approximately $15,000. She also owned an automobile with a value of $500, household goods worth $900, and had a checking account with a balance of $76. At the time of the transfer of the $74,500 to Stricklin's estate, Bostwick had the following outstanding debts:

(1) Fingerhut ($202.67)

(2) Centurytel ($169.81)

(3) Capital One ($1,000)

(4) Verizon ($160.00)

(5) Anesthesia Associates of Mobile ($25.60)

(6) Tulane University Hospital ($2,437 and $2,433)

(7) Empi, Inc. (medical equipment, $51.45)

(8) World Com ($337.00)

(9) The Orthopaedic Group ($290)

TOTAL: $7,106.53

The testimony was not clear as to exactly when Bostwick had trouble paying some of her bills, particularly the medical bills, for which her husband also was liable as the father of the minor child. Aultman maintains that Bostwick did not prove that some of the debts listed above existed at the time of the transaction. Without the disputed debts, Bostwick's debt would have been

approximately $5,500. Aultman also argued that Bostwick was liable for only half of the undisputed debts because they were joint debts; however, the Court does not accept this argument.

From the proceeds of the three insurance policies, all debts, funeral expenses, and bequests made in Stricklin's will were paid. Bostwick received a $10,000 bequest from the will, and her two children received $2,000 and $1,000 bequests. Upon receiving the bequests on October 25, 2003, Bostwick signed a consent to settlement, releasing Aultman of all liability on account of his actions as personal representative of the estate. She also signed the settlement forms on behalf of her minor children. After all the bequests were made, Aultman received the residue of the estate. Bostwick testified that she did not receive her share of the proceeds from the sale of Stricklin's home, and did not list it on her bankruptcy schedules. Aultman testified that he was instructed by his attorney not to pay Bostwick her share of the proceeds, but to hold the funds pending litigation in state court. Aultman is still holding those funds

## CONCLUSIONS OF LAW

The trustee in this case is proceeding under the constructive fraud provisions found in the Alabama Fraudulent Transfer Act (hereinafter AFTA) that states as follows:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer. Ala. Code §8-9A-5(a) (1975).

Thus, for the trustee to prevail, he must prove both prongs of the test - value and insolvency. A

5

Case 05-01085    Doc 48    Filed 03/31/06    Entered 03/31/06 16:13:26    Desc Main
Document      Page 5 of 9

constructive fraudulent transfer occurs when a debtor transfers assets to another without consideration, and the debtor was, or became insolvent at the time of the transfer. *Varner v. Varner*, 662 So. 2d 273, 276 (Ala. Civ App. 1994). The defendent Aultman has not seriously contended that there was valid consideration reasonably equivalent to the value of the transferred insurance policy.

The threshold issue in this case is whether the Debtor Bostwick was insolvent at the time of the transfer on June 9, 2003. AFTA defines "insolvency" as follows:

(a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.

(b) A debtor who is generally not paying his debts as they become due is presumed to be insolvent.

....

(d) Assets under this section do not include property that has been transferred, concealed or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter.

(e) Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset. Ala. Code §8-9A-2 (1975).

The Debtor's testimony indicated that she was not paying some of her debts as they came due. The testimony, however, was not clear as to exactly when she had trouble paying some of her bills, for which her husband also shared responsibility. As set forth above, the Court finds that based on the evidence presented, the Debtor owed the amount of $7, 106.53, as of the date of the transfer. Therefore under §8-9A-2(b), there is a presumption that the Debtor was insolvent on June 9, 2003.

This presumption may be rebutted by the evidence. Although the Debtor was not able to

6

Case 05-01085    Doc 48    Filed 03/31/06    Entered 03/31/06 16:13:26    Desc Main
Document      Page 6 of 9

pay her bills timely, the evidence does show that she had assets as of the date of the transfer. The test of insolvency under the Bankruptcy Code and AFTA is the "balance sheet test," which is essentially calculating whether liabilities exceed the assets at fair valuation. *In re Soloman,* 299 B.R. 626, 638 (10th Cir BAP 2003).

An "asset" as defined under AFTA is property of the debtor but not including: (a) property to the extent it is encumbered by a valid lien; (b) property to the extent it is generally exempt under non-bankruptcy law; or (c) an interest in property held in tenancy in common for life with cross contingent remainder to the survivor in fee to the extent it is not subject to process by a creditor holding a claim against only one tenant. Ala. Code §8-9A-1(2) (1975). The term "asset", as defined by *Black's Law Dictionary* 118 (6th ed. 1990), is "[p]roperty of all kinds, real and personal, tangible and intangible, including, *inter alia,* for certain purposes, patents and causes of action which belong to any person including a corporation and the estate of a decedent. The entire property of a person, association, corporation, or estate that is applicable or subject to the payment of his or her debts." The Court looks to non-exempt assets and unencumbered assets that could be liquidated. *In re Solomon*, 299 B.R. at 639.

In determining the value of Ms. Bostwick's assets, the Court looks to the value of the assets as of the date of the transfer because under §8-9A-5(a), that is the determinative date as to whether the debtor is insolvent. The evidence shows that on June 9, 2003, the Debtor had an interest in a mobile home financed by Green Tree Servicing, L.L.C., a 1991 Chevy Geo automobile that had a value of about $500.00, household goods worth about $900.00 and $76.00 in her checking account. At the time of the bankruptcy in November 2004, the Debtor listed the mobile home with a value of $15,000.00 and the amount of the secured claim was listed as

7

$11,512.00, leaving an equity of $3,988.00, to which she was entitled to a one-half interest of $1,994.00. The Court had no other credible evidence of value for the mobile home at the time of the transfer. The value of the mobile home would conceivably have been higher at the date of transfer because of the subsequent depreciation, but the Court must rely on the evidence before it. These assets alone would obviously not offset the amount of indebtedness owed at the time of the transfer.

However, the evidence revealed three additional assets that the Debtor had as of the date of transfer which include the $10,000.00 bequest to her in the will of the decedent, Rene Strickland, the further bequest to a portion of the proceeds from the sale of Mr. Strickland's home which amounted to $3,354.00 and the $500.00 she received at the time of the transfer. Ms. Bostwick's right to receive the bequests vested at the time of Mr. Strickland's death on October 9, 2002, subject to the decedent's estate ultimately having sufficient funds to pay the bequests after paying all debts. The right to receive the bequests are clearly property rights and are assets under the definition found in §8-9A-1(2). AFTA specifically provides for exclusions to the term "asset" and a debtor's right to receive a bequest from the Estate of a decedent is not listed as one of those exclusions. Even excluding amounts that would be generally exempt under nonbankruptcy law, the Debtor's assets clearly exceeded her debt.

Section 8-9A-2(b) provides that a debtor who is generally not paying his debts as they become due is presumed to be insolvent. *Black's Law Dictionary* 1185 (6th ed. 1990) defines a "presumption" as follows: "An inference in favor of a particular fact. A presumption is a rule of law, statutory or judicial, by which finding of a basic fact gives rise to existence of presumed fact, until presumption is rebutted." Under §8-9A-2(a), a debtor is insolvent if the sum of the

8

debtor's debts is greater than her assets at the time of the transfer.  The Court concludes that considering all of the foregoing factors, any presumption of insolvency has been successfully rebutted.  Therefore, the Plaintiff Trustee has failed to meet the burden of proof under §8-9A-5(a) as to the Debtor's insolvency and a judgment is due to be entered in favor of the Defendant and against the Plaintiff.

NOW, THEREFORE, IT IS ORDERED, the relief sought in the Plaintiff's complaint is DENIED, and a judgment be and is hereby entered in favor of Defendant and against the Plaintiff.

Dated:   March 31, 2006

*William S. Shulman*
WILLIAM S. SHULMAN
CHIEF U.S. BANKRUPTCY JUDGE